IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Kieve Milik Smith, # 311697, | ) | C/A No.: 1:15-1003-HMH-SVH |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Leroy Cartledge, Warden, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Kieve Milik Smith ("Petitioner") is an inmate at the McCormick Correctional Institution of the South Carolina Department of Corrections who filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civ. Rule 73.02(B)(2)(c) (D.S.C.) for a Report and Recommendation on Respondent's motion for summary judgment and return. [ECF Nos. 19, 20]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Respondent's motion. [ECF No. 21]. After obtaining two extensions [ECF Nos. 24, 27], Petitioner filed a response on October 28, 2015. [ECF No. 29].

Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's motion for summary judgment [ECF No. 19] be granted.

I.    Factual Background

On August 31, 2006, Petitioner and his codefendants, Anthony Wilder ("Wilder") and Leo Gadsen ("Gadsen"), forcibly entered the home of Patricia Green ("Victim"). [ECF No. 20-1 at 110, 125–26, 129–33].[1] Wilder encountered the Victim on the steps and repeatedly hit her in the head with his gun while asking, "Where is everything?" *Id.* at 126, 129. While Petitioner and Gadsen searched the house, Wilder threw the Victim on the living room floor, placed his gun in her mouth, and threatened to shoot her. *Id.* at 134. Wilder was duct taping the Victim when Sterling Spann ("Spann") and James Williams ("Williams") pulled into the Victim's driveway. *Id.* at 137–38, 140. Wilder told Gadsen "Go out there and take everything," and Petitioner and Gadsen opened the door, as Gadsen pointed a gun in Williams' face. *Id.* at 140–42, 191–95. Williams backed up towards Spann's car, and Gadsen hit Williams in the head with his gun and Williams fell to the ground. *Id.* at 195–96. Wilder exited the house. *Id.* at 142, 196. Williams then jumped up and ran to the front of Spann's car and fell again. *Id.* at 197–98. Spann was trying to put his car in reverse when Gadsen shot him twice in the chest. *Id.* at 198–99. Gadsen then walked over to Williams and shot him four times in his stomach. *Id.* at 199–200. When Gadsen ran out of bullets, Williams jumped up and ran. [ECF Nos. 20-1 at 201–202, 247; 20-2 at 25–28]. Petitioner chased Williams until he reached the Lincolnville fire station. [ECF Nos.

---

[1] Green positively identified Wilder and Gadsen.   [ECF Nos. 20-1 at 125, 139–40, 195].

20-1 at 203–204, 247; 20-2 at 25–28].[2] Two of the defendants pulled Spann from his car, and one of the defendants shot Spann again. [ECF No. 20-1 at 229, 231–33, 248–51]. Petitioner, Wilder, and Gadsen left the Victim's property and drove away in a white jeep. [ECF No. 20-1 at 234, 252; 20-2 at 3–4].

A sheriff's deputy located the white jeep and began pursuit, observing several objects flying out of the passenger side window. [ECF No. 20-2 at 53–54, 56–57. The jeep crashed and Petitioner, Wilder, and Gadsen, were removed from the vehicle. *Id.* at 58, 64–65. Officers searched the vehicle, the crash site, and the surrounding area and located guns, a roll of duct tape, masks, gloves, together with a red bandana containing cocaine, crack, and pink pills ("drug evidence"). *Id.* at 113–14, 116–18, 143–44, 146, 149–50, 183, 185–86, 227–29, 232. The gloves all tested positive for gunshot residue ("GSR") or a component of GSR. [ECF No. 20-4 at 18–19]. Petitioner's GSR test was positive for round lead particles. *Id.* at 16–17. Petitioner and his codefendants' clothing were also tested and Petitioner's DNA was found on Wilder's pants and on one of the masks. [ECF No. 20-3 at 220–22]. Spann died as a result of his gunshot wounds, and the Victim and Williams were treated for their injuries. [ECF Nos. 20-1 at 148–50, 206; 20-4 at 55, 65].

II.    Procedural Background

Petitioner was indicted by the Charleston County grand jury during the March 2008 term of court for burglary, first degree (2008-GS-10-02396), two counts of kidnapping

---

[2] An eyewitness at the crime scene identified Petitioner by the red tennis shoes he was wearing when he was arrested. [ECF No. 20-2 at 27–28, 178].

(2008-GS-10-02397), assault and battery with the intent to kill ("ABWIK") (2008-GS-10-02398), and murder (2008-GS-10-02395). [ECF No. 20-5 at 101–16]. W. Tracy Brown, Esq., represented Petitioner at a jury trial on May 5–9, 2008, before the Honorable J. Derham Cole, Circuit Court Judge. [ECF No. at 20-1 at 3 *et seq.*]. The jury found Petitioner guilty as charged. [ECF No. 20-4 at 217–19]. Judge Cole sentenced Petitioner to consecutive terms of life for murder and burglary in the first degree, 20 years for ABWIK, and a concurrent 30-year term on one of the kidnapping counts. *Id.* at 237–39.

Petitioner appealed his convictions and sentences to the South Carolina Court of Appeals ("Court of Appeals"). On appeal, Petitioner was represented by Elizabeth A. Franklin-Best, Esq., of the South Carolina Commission on Indigent Defense, Division of Appellate Defense, who filed a final brief on or about December 8, 2009. [ECF No. 20-6]. Attorney Franklin-Best raised the following issues:

1.    Was the evidence presented at trial sufficient to convict Smith? Should the trial court judge have directed a verdict of acquittal?

2.    Did the judge err by allowing the introduction of drug evidence into the case when Smith was not charged with drug offenses?

*Id.* at 4.

On December 16, 2010, the Court of Appeals filed an unpublished decision dismissing the appeal. [ECF No. 20-8]. The remittitur was issued on January 5, 2011. [ECF No. 20-9].

4

Petitioner filed an application for post-conviction relief ("PCR") on March 21, 2011, in which he alleged ineffective assistance of trial counsel. [ECF No. 20-4 at 247–50; 20-5 at 3–12]. Petitioner filed an amended PCR application on May 10, 2012. [ECF No. 20-5 at 17–23]. A PCR evidentiary hearing was held before the Honorable Kristi Harrington, Circuit Court Judge, on May 21, 2012, at which Petitioner and his PCR counsel, Jeffrey Bogdan, Esq., appeared. *Id.* at 24–92. On June 11, 2012, Judge Harrington filed an order of dismissal. *Id.* at 93–100.

Petitioner appealed from the denial of PCR and was represented by David Alexander, Esq., of the South Carolina Commission on Indigent Defense, Division of Appellate Defense. Attorney Alexander filed a petition for writ of certiorari in the South Carolina Supreme Court on or about April 26, 2013. [ECF No. 20-10]. The petition raised the following issues:

1.  Whether petitioner received ineffective assistance of counsel in derogation of his Sixth Amendment rights because trial counsel failed to move to sever his case from that of his co-defendants where his co-defendants were identified as the perpetrators and no witness identified petitioner?

2.  Whether petitioner received ineffective assistance of counsel in derogation of his Sixth Amendment rights because trial counsel failed to object to the admission into evidence of illegal narcotics that had no relevance to petitioner's trial and were extremely prejudicial?

*Id.* at 3.

5

The case was transferred to the Court of Appeals, which denied the petition on December 9, 2014. [ECF No. 20-12]. The remittitur was issued January 5, 2015. [ECF 20-13].

Petitioner filed this federal petition for a writ of habeas corpus on February 23, 2015. [ECF No. 1-2 at 2].[3]

II.    Discussion

    A.    Federal Habeas Issues

Petitioner asserts he is entitled to a writ of habeas corpus on the following grounds:

**Ground One**:    Trial counsel was ineffective for failing to object to certain testimony from John Jones, III and for failing to properly cross-examine him.

    <u>Supporting Facts</u>: At trial, the State called [M]r. John Jones, III to testify. He testified that he was watching television and talking on the phone in his home on August 31, 2006 when he heard gunshots. He then looked out his bedroom window and saw Jamie Williams being chased by a man with "all black on with, red, white and green Nikes or something." App. p. 275, lines 14-16. At no time did Mr. Jones testify that he saw the man giving chase possessing a gun. The Solicitor's final question and answer of Mr. Jones was:

        Q. Do you remember seeing or being able to see what kind of gun or what color the gun was that the person that was chasing Jamie had?

        A.  No. Sir.

---

[3] The court received the petition on February 27, 2015, and docketed it on March 2, 2015. [ECF No. 1]. Because Petitioner is incarcerated, he benefits from the "prison mailbox rule." *Houston v. Lack*, 487 U.S. 266 (1988). The envelope containing the petition was deposited in the prison mailing system on February 23, 2015. [ECF No. 1-2 at 2].

App. p. 280, lines 14-17. Trial counsel failed to object. Trial counsel then briefly cross-examined Mr. Jones, asking him about the clear line of vision he had outside his window because of certain trees that were blocking the view. Trial counsel also asked about the possibility that the dog pens blocked Mr. Jones' view of the chase.

**Ground Two**:    Trial Counsel was ineffective for failing to move to sever the Petitioner's trial from the trial of the co-defendants.

Supporting Facts: The surviving victims of the crimes positively identified each of the co-defendants at trial as the perpetrators. Neither of them could identify the Petitioner. In fact, not one witness could positively place the Petitioner at the scene of the crime. Trial counsel was ineffective in failing to move to sever the Petitioner's trial from the trial of the co-defendants. Such a motion could have been easily made either before or at the onset of the trial.

**Ground Three:**    Trial counsel was ineffective for failing to object to the admission of certain drug evidence.

Supporting Facts: The Petitioner was not charged with a drug offense. At trial, a police officer testified that he recovered from the area near the white Jeep Liberty a red bandana filled with cocaine, crack, and pills. App. p. 478, lines 6-25 – p. 479, lines 1-2. The Solicitor moved these items into evidence and trial counsel failed to object. App. p. 479, lines 12-15. On direct appeal, the [C]ourt of Appeals held that the Petitioner's argument that the drug evidence was inadmissible was not preserved because of trial counsel's failure to object.

**Ground Four:**    Trial counsel was ineffective for failing to object to the hearsay testimony of deputy Scott Jackson.

Supporting Facts: This issue was amended to the petitioner's case during the State post-conviction relief hearing. See App. p. 1029, lines 11-24.

The white Jeep was the only evidence that involved the Petitioner in these crimes, the information from a witness stating that he saw a white Jeep fleeing the scene of these crimes was critical evidence

7

because it was what gave the officers probable cause for pursuing and arresting the occupants of a white Jeep on the day of this incident. Trial counsel testified at the State post-conviction relief hearing that "clearly I could have objected to that being hearsay and I did not." App. p. 1054, lines 18-20. This was prejudicial to the Petitioner because there was no other testimony that placed the white Jeep at the crime scene but the hearsay testimony of Deputy Jackson.

[ECF Nos. 1 at 5–10; 1-4 at 1–2, 4, 6, 8].

B.    Standard for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* At the summary judgment stage, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon

8

mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e).

      C.      Habeas Corpus Standard of Review

           1.      Generally

Because Petitioner filed his petition after the effective date of the AEDPA, review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410. Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

2.    Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

a.    Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)    (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—

(A)    the applicant has exhausted the remedies available in the courts of the State; or

(B)    (i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

10

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)     An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266 (S.C.

2007).[4] Furthermore, strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

The United States Supreme Court has held that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"—which includes "petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). This opportunity must be given by fairly presenting to the state court "both the operative facts and the controlling legal principles" associated with each claim. *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000) (citing *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997) (internal quotation marks omitted)). That is to say, the ground must "be presented face-up and squarely." *Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir. 1994) (citation and internal quotation marks omitted).

The South Carolina Supreme Court has held that the presentation of claims to the state court of appeals without more is sufficient to exhaust state remedies for federal

---

[4] In *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007, decision in *Marlar*, South Carolina courts had not been uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

habeas corpus review. *State v. McKennedy*, 559 S.E.2d 850 (S.C. 2002); *see also In re Exhaustion of State Remedies in Criminal and Post–Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990). The *McKennedy* court held that *In re Exhaustion* had placed discretionary review by the South Carolina Supreme Court "outside of South Carolina's ordinary appellate review procedure pursuant to *O'Sullivan*." 559 S.E.2d at 854. As such, it is an "extraordinary" remedy under *O'Sullivan*, "technically available to the litigant but not required to be exhausted." *Adams v. Holland*, 330 F.3d 398, 403 (6th Cir. 2003).

Because the South Carolina Supreme Court has held that presentation of certain claims to the South Carolina Court of Appeals without more is sufficient to exhaust state remedies, a claim is not procedurally barred from review in this court for failure to pursue review in the South Carolina Supreme Court after an adverse decision in the South Carolina Court of Appeals.

### b.    Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass

can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the Supreme Court explains:

> . . . [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986), *superseded by statute on other grounds* (AEDPA).

14

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Matthews v. Evatt*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

### 3. Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the states courts in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to

15

excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

### 4. Ineffective Assistance of Counsel Claims

To prevail on his ineffective assistance of counsel claims, Petitioner must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). The court must apply a "strong presumption" that trial counsel's representation fell within the "wide range of reasonable professional assistance," and the errors must be "so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011). This is a high standard that requires a habeas petitioner to show that counsel's errors deprived him "of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. That the outcome would "reasonably likely" have been different but for counsel's error is not dispositive of the prejudice inquiry. Rather, the court must determine whether the result of the proceeding was fundamentally unfair or unreliable. *Harrington*, 131 S. Ct. at 787–88; *Strickland*, 466 U.S. at 694.

The United States Supreme Court has cautioned that "'[s]urmounting Strickland's high bar is never an easy task[,]' . . . [e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 131 S. Ct. at 788 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). When evaluating an

16

ineffective assistance of counsel claim, the petitioner must satisfy the highly deferential standards of 28 U.S.C. § 2254(d) and *Strickland* "in tandem," making the standard "doubly" more difficult. *Harrington*, 131 S. Ct. at 788. In such circumstances, the "question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied Strickland's deferential standards." *Id.* The unreasonableness of the state court determination must be "beyond any possibility of fairminded disagreement." *Id.* at 787. "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 786. Section 2254(d) codifies the view that habeas corpus is a "'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id.*, quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)).

   D.  Analysis

     1.  Procedurally-Barred Grounds

  Respondent argues Petitioner procedurally defaulted on his claims in Grounds One and Four by failing to raise these issues in his PCR appeal. [ECF No. 20 at 22]. The undersigned agrees. In Grounds One and Four, Petitioner alleges his trial counsel was ineffective for failing to properly cross-examine and object to certain testimony from John Jones III and for failing to object to the hearsay testimony of deputy Scott Jackson. [ECF No. 1-4 at 2, 8]. Because the claims in Grounds One and Four were not raised to or ruled upon by the South Carolina appellate courts, they were not preserved for review. *See, e.g.,* *Coleman v. Thompson*, 501 U.S. 722 (1991) (holding issue not properly raised to state's

highest court, and procedurally impossible to raise there now, is procedurally barred from review in federal habeas). As a result, these claims were not properly presented to the South Carolina appellate courts, which would find them procedurally defaulted if Petitioner attempted to raise them now.

In his response, Petitioner cites to *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990), and argues the issues in Grounds One and Four were addressed in the PCR court's order of dismissal, and he is therefore not required to present these issues to the state appellate courts to have them reviewed in his federal habeas. [ECF No. 29 at 5]. Petitioner is mistaken. The holding in *In Re Exhaustion* explains that the presentation of certain claims to the South Carolina Court of Appeals, without more, is sufficient to exhaust state remedies. *In Re Exhaustion* does not, however, excuse Petitioner's failure to raise the issues in Grounds One and Four in his PCR appeal. Accordingly, Petitioner's claims in Grounds One and Four are barred absent a showing of cause and actual prejudice or actual innocence. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

### 2.     Cause and Prejudice

Petitioner has not shown sufficient cause and prejudice to excuse the default of his claims in Grounds One and Four. In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or

demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. Petitioner has failed to meet this burden. Thus, his claims are procedurally barred from consideration by this court and should be dismissed. *See* 28 U.S.C. § 2254; *Rodriguez v. Young*, 906 F.2d 1153, 1159 (7th Cir. 1990) ("Neither cause without prejudice nor prejudice without cause gets a defaulted claim into Federal Court."); *Mazzell v. Evatt*, 88 F.3d 263, 269 (4th Cir. 1996) (holding that to show prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different); *Rodriguez*, 906 F.2d at 1159 (holding a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of one who is actually innocent") (*citing Murray*).

The existence of cause must ordinarily turn on whether the prisoner can show some objective factor external to the defense impeded counsel's or his efforts to comply with the state's procedural rule. *Murray*, 477 U.S. at 488. Petitioner fails to articulate cause for procedurally defaulting on these claims. Petitioner had a trial, a direct appeal, a PCR hearing, and an appeal from the PCR in which to raise these issues. However, he failed to raise them, raise them properly, or preserve the issues for habeas review. Petitioner cannot establish cause and prejudice because he has abandoned the opportunities to preserve these issues.

In the alternative, Petitioner must show a miscarriage of justice. To demonstrate a miscarriage of justice, Petitioner must show he is actually innocent. Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614,

622 (1998). Petitioner cannot establish that the errors he complains of probably resulted in the conviction of an innocent person. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). To pass through the actual-innocence gateway, a petitioner's case must be "truly extraordinary." *Id.* The court's review of the record does not support a showing of actual innocence.

During the trial, the solicitor presented the facts recited in the Factual Background section above. The jury determined Petitioner was guilty of murder, burglary in the first degree, kidnapping, and ABWIK. The record makes an assertion of actual innocence not credible. The undersigned finds Petitioner has failed to meet his burden of demonstrating actual innocence, and therefore, procedural bars apply to his claims in Grounds One and Four.

3.    Merits Review

a)    Ground Two

Petitioner argues his trial counsel was ineffective for failing to file a motion to sever his trial from the trial of his codefendants. [ECF No. 1-4 at 4].

At the PCR hearing, Petitioner testified trial counsel

could have put in a Motion to have me a separate trial, so I don't get exposed to the other things that went on - - you know, my codefendant had a trial with myself, so the evidence that was exposed towards him goes towards me and I think I should have been standing on my own. During the trial, you know, they found one guilty and they found all guilty.

[ECF No. 20-5 at 37]. When asked what evidence was admitted against his codefendants that would have applied to him, Petitioner testified his codefendants were identified during

the trial, and he was not. *Id.* Petitioner stated he did not know he was being tried jointly with his codefendants until the day of his trial. *Id.* at 44–45.

PCR counsel testified he felt it was okay for Petitioner to be tried jointly with codefendants who were going to be positively identified at trial. [ECF No. 20-5 at 50]. Counsel stated he met with the codefendants' counsel on numerous occasions and "the idea was that we would be better off all going together, because that way we would get three bites at every apple." *Id.* at 51. Counsel testified he and the other counsel "did talk about certain witnesses, what we want to do with this witness and how do we handle this testimony, those kinds of things." *Id.* Counsel stated he does not feel he would have defended Petitioner's case differently if Petitioner had a separate trial. *Id.* at 54.

The PCR court found this ineffective assistance of counsel allegation to be without merit, as follows:

> This Court finds the Applicant failed to meet his burden of proving trial counsel should have filed a motion for severance. Initially, this Court notes the Applicant's testimony that he was not aware he would have a joint trial in this case. This Court finds the Applicant's testimony is not credible and that he was advised by trial counsel there would be a joint trial. Regardless, trial counsel did not err in failing to move for severance in this case. Trial counsel testified he discussed the State's case with the co-defendants' attorneys and determined it was more beneficial for the Applicant to have a joint trial because there would be "three bites at every apple." This Court finds this was a valid trial strategy. See Roseboro v. State, 317 S.C. 292, 294, 454 S.E.2d 312, 313 (1995) (finding where trial counsel articulates a valid reason for employing a certain strategy, such conduct should not be deemed ineffective assistance of counsel). This Court also finds the Applicant failed to articulate how he was prejudiced by a joint trial. The State presented overwhelming evidence of the Applicant's guilt: witnesses saw the suspects leave in a white Jeep, the Applicant and his co-defendants were found in this Jeep, the burglary victim identified the Applicant's two co-defendants, the ABIK victim identified one of the co-defendants, gloves and masks were thrown

from the Jeep during the police chase (and gunshot residue was found on some of these gloves and the Applicant's DNA was found on one of the masks), the fired bullet casings were matched to the pistol found in the Jeep, a witness identified the Applicant's red shoes as those worn by one of the suspects, and both the Applicant's blood, and the murder victim's blood were found on a co-defendant's clothing. As such, the Applicant failed to prove the outcome of his case would have been different if trial counsel had moved for severance. See Geter v. State, 305 S.C. 365, 367, 409 S.E.2d 344, 346 (1991) (concluding reasonable probability of a different result does not exist when there is overwhelming evidence of guilt).

*Id.* at 97–98.

In his response, Petitioner references the evidence of his guilt cited by the PCR court, which included the identification of red tennis shoes worn by Petitioner as the shoes worn by one of the suspects. [ECF No. 29 at 9]. Petitioner alleges the PCR court's evidence did not place him at the scene of the incident and argues the testimony concerning the red tennis shoes and drug evidence found at the crash site would not have occurred if he had a separate trial. [ECF No. 29 at 9–10]. Petitioner also argues his counsel's claim that it was more beneficial for him to have a joint trial was not sound trial strategy "because any incriminating response from a witness on cross-examination would be prejudicial to each of the Defendants." *Id.* at 10. Petitioner alleges the trial court would have granted the severance motion because there was no allegations in his indictment that he acted in concert with his codefendants to commit these crimes. *Id.* at 10–11.

The PCR court reasonably found trial counsel's failure to move to sever the trial did not affect the outcome of the trial under *Strickland*. Courts must be wary of second guessing counsel's trial tactics and where trial counsel articulates a valid reason for employing certain trial strategy, such conduct should not be deemed ineffective assistance

of counsel if it is objectively reasonable under the circumstances. *Strickland v. Washington*; *Caprood v. State*, 525 S.E.2d 514 (S.C. 2000); *Whitehead v. State*, 417 S.E.2d 529 (S.C. 1992). Petitioner has failed to show by clear and convincing evidence the PCR court reached an unreasonable factual determination given the evidence and record before it. Petitioner has also not shown that the state court's analysis of this issue misapplied clearly established federal law or, even if there was an error, that it was unreasonable. *See Williams*, 529 U.S. at 410. Based on the foregoing, Petitioner is not entitled to federal habeas relief on Ground Two.

b)    Ground Three

In Ground Three, Petitioner alleges his trial counsel was ineffective for failing to object to the admission of the drug evidence. [ECF No. 1-4 at 6].

At the PCR hearing, Petitioner testified he was not able to appeal the admission of the drug evidence although he was not charged with a drug offense because his counsel did not object to its admission at his trial. [ECF No. 20-5 at 37–38]. Petitioner testified he was prejudiced by this evidence because:

> Basically they see that it was some drug-related, that drugs were involved and that went against my character, you know, saying that we had drugs or whatever.

*Id.* at 39.

When asked why he did not object to the admission of the drug evidence, counsel stated:

Again, I don't recall if the - - if there was no objection. I just don't recall. I mean, I can go - - think back and think why didn't we object, why wouldn't we have objected, why he objected, those kinds of things. I can see that after that that Mr. Davis objected to the chain. I think it was later introduced, later on in the trial. As I understand, Mr. Lofton didn't object either, as I recall and from what I see here.

Again, I don't recall if there was some reason why we didn't want to object to that, whether or not we wanted to tell the jury at end, 'Hey, look, you know you can't put all of this stuff that they find on the side of I-26 on these guys or all of these things scattered in the area around the wreckage on these guys.' 'For example, they found drugs and they didn't charge him with that. Why? Maybe, there was a question as to ownership.' But I can't tell you that that was the actual thinking.

*Id.* at 62–63.

The PCR court denied this claim, as follows:

This Court finds the Applicant failed to meet his burden of proving trial counsel should have objected to the admission of the narcotics evidence. At trial, Deputy Brinson testified he found narcotics in the vicinity of the crash site and those narcotics were later entered into evidence. (Trial transcript, pp.477-79). While this Court finds trial counsel could have objected to the admission of this evidence, the failure to do so did not prejudice the Applicant's case. As discussed <u>supra</u>, the State presented overwhelming evidence of the Applicant's guilt. <u>See</u> <u>id.</u> The Applicant failed to demonstrate that his trial would have had a different outcome if this evidence had not been admitted.

*Id.* at 98.

In response, Petitioner argues counsel should have objected to the introduction of the drug evidence because of its prejudicial nature and the "high likelihood that the petitioner would be convicted for the illegal drugs, something he [was] not charged with." [ECF No. 29 at 12–13]. Petitioner alleges "there is no doubt that trial counsel failed the prejudice test described in the <u>Strickland</u> case because of his representation." *Id.* at 14.

Given the evidence of Petitioner's guilt introduced at his trial as outlined in the Factual Background section above, the undersigned finds the PCR court reasonably applied *Strickland* in finding Petitioner was not prejudiced by trial counsel's failure to object to the introduction of the drug evidence. Petitioner has not offered any evidence the jury based its verdict on the drugs introduced during his trial, and therefore he fails to show the PCR court unreasonably applied United States Supreme Court precedent in deciding his ineffective assistance of counsel claim. Additionally, Petitioner has failed to show by clear and convincing evidence the PCR court reached an unreasonable factual determination of these issues given the evidence and record before it. *Evans v. Smith*, 220 F.3d 306, 312 (4th Cir. 2000) (holding that federal habeas relief will not be granted on a claim adjudicated on the merits by the state court unless it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding); 28 U.S.C. § 2254(e)(1) (finding the determination of a factual issue by the state court shall be presumed correct unless rebutted by clear and convincing evidence). Accordingly, Petitioner has failed to overcome the deferential standard of review accorded the state PCR court's determination of these issues. Petitioner has failed to show he is entitled to federal habeas corpus relief on Ground Three and the undersigned recommends this ground be denied and dismissed with prejudice.

IV.     Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends that Respondent's motion for summary judgment [ECF No. 19] be granted.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

January 22, 2016                              Shiva V. Hodges
Columbia, South Carolina                      United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.   28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*   Fed. R. Civ. P. 6(a), (d).   Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**   28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).